UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81240-CIV-HURLEY

TRAVELOCITY.COM LP,
    Plaintiff,

vs.

PIER 35 EVENTS, INC.,
    Defendant.
_____/

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK
OF PERSONAL JURISDICTION [ECF NO. 5]

**Preface**

Plaintiff, Travelocity.com, LP ("Travelocity") commenced this action against Defendant Pier 35 Events, Inc. ("Pier 35") for breach of a licensing agreement involving a Travelocity gift card program. Pier 35 has moved to dismiss for lack of personal jurisdiction, contending there is no basis for the exercise of jurisdiction over it by valid contractual agreement, as urged by Travelocity, and no independent basis for the exercise of jurisdiction under Florida's general long-arm statute, §48.193, Fla. Stat. (2013).

Upon consideration, the court concludes that Travelocity does not demonstrate the applicability of the Florida long-arm statute, but that Pier 35 agreed to be sued in the Southern District of Florida pursuant to a valid and enforceable forum-selection clause, thus establishing its minimum contacts with the State of Florida and permitting the exercise of personal jurisdiction over it within constitutional bounds. The court shall accordingly deny the defendant's motion to dismiss on the basis of its contractual waiver of the requirements for personal jurisdiction in this forum.

## I. Standard of Review

When a defendant moves to dismiss for lack of personal jurisdiction, an evidentiary hearing is not required. *Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. Appx. 852 (11th Cir. 2013), citing *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1319 n. 6 (11th Cir. 2004). When the court does not hold a hearing, the plaintiff must establish a *prima facie* case of personal jurisdiction by presenting "sufficient evidence by way of affidavits or deposition testimony to survive a motion for a directed verdict." *Id*. If the plaintiff makes a *prima facie* case for personal jurisdiction, the defendant then must raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction; if the defendant does so, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293 (11th Cir. 2009). The court must construe the allegations in the complaint as true if they are not contradicted by the defendant's evidence; when there is conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. *Frit*, 358 F.3d at 1319.

In determining whether the exercise of personal jurisdiction of a non-resident defendant is proper, a two-step inquiry generally applies. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). First, the court examines whether exercise of jurisdiction over the non-resident defendant would satisfy the requirements of the state long-arm statute. *Meier ex rel. Meir v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002). Second, the court examines whether exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id*. The due process inquiry traditionally requires the court to determine whether the defendant has sufficient "minimum

2

contacts" with the forum state so as to satisfy "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 85 L. Ed.2d 528 (1985); *Madara v. Hall*, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829 (11th Cir. 1990).

In this particular case, there is a further issue as to whether Pier 35 made a valid contractual submission to jurisdiction in this state, consistent with the requirements of §§ 685.101 – 102, Fla. Stat (2013) – regardless of the applicability of the Florida long-arm statute -- and whether the exercise of jurisdiction on the basis of such a voluntary waiver is consistent with the due process requirements of the Fourteenth Amendment.

Recognizing that Travelocity, as plaintiff, has the burden of establishing a *prima facie* case of personal jurisdiction under these requirements, *Meier ex rel Meier v. Sun Int'l Hotels, Ltd*, 288 F.3d 1264 (11th Cir. 2002), the court now applies these standards to the evidence in this case.

## II.  Facts[1]

Travelocity is a Delaware corporation with principal place of business in Southlake, Texas, and a well-known provider of on-line travel information and booking services. Pier 35 is a California corporation which entered into a licensing agreement with Travelocity in 2008 ("Agreement") authorizing it to use the Travelocity name to create and sell Travelocity gift cards. The contract involved "B2B" or "business to business" sales between Pier 35 and various retailers, none from Florida, who placed the cards in select stores for sale to end-users. Pier 35 also sold the

---

[1] The recited facts are drawn from the plaintiff's complaint and the jurisdictional proofs submitted by both parties in this proceeding.

3

cards to banks and credit card companies, none having a principal place of business in Florida, who then issued the cards to customers under various rewards programs. Under the Agreement, Pier 35 was authorized to operate a website, "www.travelocityincentives.com," which allowed end-users to buy Travelocity gift cards for travel and then redeem the cards on line by engaging directly with Travelocity to book and purchase trips and accommodations. This website allowed customers to search a database of over 70,000 hotels worldwide by city and date, and to then enter payment transactions and actively redeem travel gift cards directly with Travelocity.

From 2008 to 2013, the five-year term of the Agreement, these transactions resulted in 5182 hotel reservations made by end-users with Florida billing addresses, representing $1.2 million in revenues (less than 5% of total business generated under the Agreement). In addition, 9318 reservations were made through the website for hotel destinations in Florida, generating $2.4 million in revenues over this same time period. Travelocity provided inventory at the website, and controlled all on-line sales.

At the inception of the Agreement, Travelocity maintained an office in North Palm Beach, Florida, operated by Judy Boettiger, an account support manager who oversaw Travelocity's "partner network" relationships with member affiliates who used Travelocity technology and support in their businesses, including Pier 35. According to Boettiger, Travelocity maintained its North Palm Beach, Florida office from 2003 – 2009, and her management responsibilities during her tenure at this post included servicing the account of Pier 35 when it joined the Travelocity network in 2008. Pier 35, however, has never maintained offices or employees in Florida, and has never directly transacted business with Florida businesses or residents.

The Agreement contained the following forum-selection clause:

<u>Governing Law, Jurisdiction, and Venue</u>.  This agreement and all matters or issues related to this Agreement shall be governed by and construed under the laws of the State of Florida without application of principles of conflicts of laws. Each of the Parties irrevocably and unconditionally agrees that any legal proceedings arising out of or relating to this Agreement may be brought in the United States District Court for the Southern District of Florida, West Palm Beach Division or, if that court lacks jurisdiction, any court of competent jurisdiction in Palm Beach County; and (b) consents to the jurisdiction of each such court in any proceeding.

Travelocity did not renew the Agreement after the expiration of its initial five-year term.  At that point, it contends that Pier 35 began withholding funds owed to it pursuant to the Agreement.  On December 3, 2013, Travelocity filed suit against Pier 35 in this Court, asserting claims for breach of contract, conversion, unjust enrichment and specific performance.  Among other things, it seeks recovery of $1 million allegedly owed for redeemed gift cards; $1.6 million owed for unredeemed gift cards, and $400,000 due for "breakage."  Although Travelocity argues in its opposition brief in this proceeding that a "significant amount of the money withheld by Pier 35 and owed to Travelocity is tied to Florida," (Response Brief, p. 6) (ECF 6), it does not adduce any proofs linking the contractual breaches asserted in this action to any monies allegedly owed by Pier 35 in connection with any Florida-related gift card transactions.

### III.  Discussion

#### A.  Florida Long-Arm Statute

Florida's long-arm statute provides for personal jurisdiction over a nonresident defendant under two sets of circumstances.  The first, set forth at § 48.193 (1), provides for specific personal jurisdiction when a claim arises from or is directly related to the defendant's forum-related contacts. *Oldfield v. Pueblo de Bahia Lora, S.A.,* 558 F.3d 1210, 1221 n. 27 (11th Cir. 2009); *Stubbs v.*

5

*Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000). Actions that give rise to specific jurisdiction under this provision include carrying on a business in Florida, which confers jurisdiction under § 48.193 (1) (a).

The second basis for jurisdiction, § 48.193 (2), provides for general personal jurisdiction where a defendant is engaged in "substantial and not isolated" activity within Florida, regardless of whether the claim asserted arose from that activity. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002); *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000). This requires a showing of "continuous and systematic" general business contacts within the state, which may be demonstrated where a significant portion of the defendant's business operations or revenue is derived from established commercial relationships in the state, or where a defendant continuously solicits and procures substantial sales in Florida. *Trustees of Columbia University v. Ocean World, S.A.,* 12 So.3d 788, 792 (Fla. 4th DCA 2009).

### B. Waiver of Personal Jurisdiction

Typically, this court examines issues of personal jurisdiction under the above two alternative prongs of Florida's long-arm statute. However, this case presents a further issue regarding contractual submission to personal jurisdiction pursuant to § 685.102, Fla. Stat. (2013). Under this statute, where certain statutory requirements are met, parties to a commercial contract may, by agreement alone, confer personal jurisdiction on the courts of Florida. *JetBroadband WV, LLC v. MasTec North America, Inc.,* 13 So.3d 159 (Fla. 3d DCA 2009).

6

Section 685.102 provides in pertinent part:

…[a]ny person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to § 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

In turn, Section 685.101, Fla. Stat., provides:

The parties to any contract, agreement, or undertaking ….. in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000.00 … may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract … whether or not such contract … bears any relation to this state.

However, § 685.101 does not apply to any contract, agreement, or undertaking:

(a) Regarding any transaction which does not bear a substantial or reasonable relation to this state in which every party is either or a combination of:

1. A resident and citizen of the United States, but not of this state; or

2. Incorporated or organized under the laws of another state and does not maintain a place of this business in this state.

§ 685.101(2), Fla. Stat. In other words, § 685.101 only applies if (1) the contract bears a substantial or reasonable relation to Florida, or (2) at least one of the parties is either a resident or citizen of Florida (if a person), or is incorporated or organized under the laws of Florida, or maintains a place of business in Florida (if a business*). Jetbroadband WV, LLC v. MasTec North America*, 13 So.3d 159, 162, (Fla. 3d DCA 2009), citing Mullins & Giuliano, *Contractual Waiver of Personal Jurisdiction under F.S. 685.102: The Long-Arm Statute's Little-Known Cousin*, 80-May Fla. B. J. 36, 37 (2006).

7

Thus, to satisfy these statutory requirements, the contract, agreement or undertaking must (1) include a choice of law provision designating Florida law as the governing law; (2) include a provision whereby the nonresident agrees to submit to the jurisdiction of the courts of Florida; (3) involve consideration of not less than $250,000; (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida, or have at least one of the parties be a resident of Florida (if a person), or incorporated under its laws or maintain a place of business in Florida (if a business).  Put another way, as long as one of the parties is a resident of Florida, or is incorporated or organized under the laws of Florida (or maintains a place of business here), and the other statutory requirements are met, § 685.102 operates regardless of whether the underlying contract bears any relation to Florida, and notwithstanding any law that would otherwise limit the right of a person to maintain the action or proceeding in this state. *Jetbroadband, supra,* at 162.

However, the due process inquiry still obtains when considering the issue of personal jurisdiction in cases governed by §§ 685.101, 685.102.  That is, the court must still consider whether there are minimum contacts sufficient to justify the court's exercise of jurisdiction over the defendant even in instances of an asserted voluntary waiver of jurisdiction.  In the commercial context, this standard is met if a forum-selection clause exists that is "freely negotiated" and is not "unreasonable and unjust."  *Steller Group, Inc. v. Mid-Ohio Mechanical, Inc.*, 2004 WL 5685570 at *2 (M.D. Fla. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985));  *Global Satellite Communication Co. v. Sudline*, 849 So.2d 466, 269 (Fla. 4th DCA 2003).

### C. Discussion

Travelocity argues that Pier 35 contractually consented to this court's jurisdiction, permitting the exercise of personal jurisdiction under §§ 685.101-102, or that jurisdiction alternatively exists

8

under Florida's general long-arm statute, on theory that Pier 35's business activities in this state are sufficiently significant to support the exercise of either specific jurisdiction under § 48.193 (1) (a) or general jurisdiction under § 48.193 (2).

Accordingly, in its analysis here, the court must determine, first, whether the exercise of jurisdiction over Pier 35 is authorized under either the contractual waiver statute or general long-arm statute.  Second, assuming that jurisdiction is authorized under one of these statutory vehicles, the court must decide whether the defendant has established sufficient minimum contacts with the State of Florida, so that the exercise of jurisdiction over it would comport with "traditional notions of fair play and substantial justice," and hence satisfy the due process requirements of the Fourteenth Amendment. *Sculptchair Inc. v Century Arts, Ltd*, 94 F.3d 623, 626 (11th Cir. 1996), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L .Ed. 95 (1945).

In specific personal jurisdiction cases, the court applies a three-part due process test to determine whether a defendant has established sufficient minimum contacts to meet due process requirements, examining: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant's contacts represent a "purposeful availment of the privilege of conducting activities within the forum state," thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable, and (3) whether the exercise of personal jurisdiction would be fair and reasonable. *Louis Vuitton Malletier, S. A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) and cases cited *infra.*

The "fair and reasonable" inquiry permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself

9

of the privilege of doing business there. These factors include: (1) the forum state's interest in adjudicating the dispute; (2) the burden on defendant of litigating in the forum; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the interests of the several states in promoting fundamental social policies. Thus, even when a lawsuit arises out of a defendant's purposefully generated contacts with the forum, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair in light of these factors. *Consulting Engineers Corp. v. Geometric Ltd.,* 561 F.3d 273 (4th Cir. 2009), *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-478, 105 S. Ct. 2174, 2184-85; *Barrett v. Lombardi*, 239 F.3d 23 (1st Cir. 2001).

In contrast, the requirement of continuous and systematic general business contacts, as a basis for asserting general personal jurisdiction over a non-resident defendant under a state long-arm statute and due process principles, establishes a much higher threshold than the "minimum contacts" needed to sustain specific jurisdiction. The "continuous and systematic business contacts" required to confer general jurisdiction must be "extensive and pervasive, in that a significant portion of the defendant's business operations or revenue are derived from established commercial relations in the state." *Taylor v. Gutierrez*, 129 So.3d 415 (Fla. 3d DCA 2013); *Caiazzo v. American Royal Arts Corp.,* 73 So.3d 245, 262 (Fla. 4th DCA 2011). Where this threshold is met, the due process requirement of "minimum contacts" is deemed fulfilled. *Schwartzberg v. Knobloch*, 98 So.3d 173 (Fla. 2d DCA 2012). And, while less contact is needed with the forum for specific jurisdiction than for general jurisdiction, both forms of jurisdiction require that the defendant purposefully avail itself of the privilege of conducting activities within the forum state. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997).

With regard to internet activity, most courts adhere to the *Zippo* "sliding scale" standard in determining whether electronic contacts with a state constitute sufficient minimum contacts with the forum so as to constitutionally permit the exercise of the long-arm jurisdiction over it. *See e.g. ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707 (4th Cir. 2002), citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc..,* 952 F. Supp. 1119 (W.D. Pa. 1997); *JB Oxford Holdings, Inc. v. Net Trade, Inc*., 76 F. Supp. 2d 1363 (S.D. Fla. 1999). In *Zippo*, the court concluded that personal jurisdiction is not proper over a defendant which has merely engaged in passive internet activity, i.e. the mere posting of information on an internet web site which is accessible to users in foreign jurisdictions. Conversely, *Zippo* recognized that a defendant that enters into contracts with the residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet is engaged in the privilege of conducting commercial activity in the forum. Finally, *Zippo* identified a "middle ground" occupied by interactive web sites where a user can exchange information with the host computer; in this category of cases, *Zippo* posits that courts must examine the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine if sufficient contacts exist to warrant the exercise of jurisdiction. *See generally Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 401 (4th Cir. 2003); *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999); *Cybersell, Inc. v Cybersell, Inc*., 130 F.3d 414 (9th Cir. 1997). *See e.g. Gather, Inc. v. Gatheroo*, 443 F. Supp. 2d 108 (D. Mass. 2006) (internet group formation facilitator in Minnesota satisfied requirements for assertion of personal justification by federal court in Massachusetts, where facilitator maintained interactive website through which it accepted memberships from Massachusetts residents, communicated with Massachusetts internet site users and provided them

with information specific to Massachusetts, and solicited advertisements from users, including those in Massachusetts).

### 1. Specific Jurisdiction under Florida Long-Arm Statute

At the outset, the court summarily rejects Travelocity's invocation of specific jurisdiction under § 48.193 (1) (a) (1), which authorizes exercise of jurisdiction over a non-resident defendant which conducts a business or business venture in this state, as to causes of action arising from that activity. In this case, Travelocity does not demonstrate any relationship between monies generated by Florida end-users of Travelocity gift cards originally distributed by Pier 35 pursuant to the Agreement and the causes of action asserted in this lawsuit. That is, Travelocity adduced no evidence showing that the monies allegedly owed to it by Pier 35 are related to redeemed or unredeemed gift cards purchased by Florida residents, or to gift cards used for the purchase of Florida-related travel accommodation; therefore, the causal connection required for the assertion of specific jurisdiction under § 48.193 (1) (a) is conspicuously missing, eliminating this prong of the long-arm statute as a premise for the exercise of personal jurisdiction over this defendant.

### 2. General Jurisdiction Under Florida Long-Arm Statute

The court also rejects Travelocity's invocation of general jurisdiction under § 48.193 (2), for lack of showing of the requisite "continuous and systematic business contacts" needed to sustain jurisdiction under this prong of the statute. That a relatively small percentage of revenues generated under the Agreement were derived from Florida-based end users is not sufficient to convey general jurisdiction over this foreign defendant. *See Taylor v. Gutierrez*, 129 So.3d 415 (Fla. 3d DCA 2013); *Caiazzo v. American Royal Arts Corp.*, 73 So.3d 245 (Fla. 4th DCA 2011) (level of business in Florida is insufficient to constitute continuous and systematic business activities when only a *de*

*minimis* percentage of total sales is derived from sales to Florida); *Liberty Mut. Fire Ins. Co v Southeastern Mechanical Services, Inc.,* 2010 WL 2509505 (M.D. Fla. 2010), citing *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1167 (11th Cir.2 2005) (declining to exercise jurisdiction under "carrying on business" in the state section of Florida long-arm statute where defendant had only six Florida clients who accounted for, at most, less than 5% of its gross revenue).

On one hand, it is undisputed that the Pier 35's promotion of Travelocity gift card program resulted in sales to Florida end users valued, in the aggregate, in excess of one million dollars, and sales to non-residents for Florida-based accommodations valued, in the aggregate, in excess of two million dollars. However, it is also undisputed that all of these card purchases were made through third-party intermediaries – none resident in Florida – and that all card redemptions were made on the travelocity.incentives.com website through direct transactions with Travelocity. Notably, Travelocity does not dispute that the indirect sale of a relatively small number of gift cards to Florida residents (5% of total gift card sales during the relevant contract period) and redemption of a small number of cards for Florida-based accommodations by end users interfacing directly with Travelocity constituted defendant's sole contact with the State of Florida. Further, it does not supply affidavits or other evidence suggesting that Pier 35 targeted Florida-based end users, or otherwise directed any other business activity toward this state.

It appears that Pier 35 merely operated its website as a conduit for end users of Travelocity gift cards to redeem the cards in direct interactions with Travelocity. Merely selling the cards to third-party intermediaries and maintaining a website where the cards might be redeemed directly

13

with Travelocity by any future potential end users, including Florida residents, does not satisfy the Florida long-arm statute's "substantial and not isolated" activity requirement for general jurisdiction.

Finally, even if the remote business activities of Pier 35 could be considered sufficient to sustain either specific or general jurisdiction under the provisions of the Florida long-arm statute asserted by Travelocity, the court is not persuaded that the exercise of jurisdiction under either provision of the statute would comport with the due process requirements of the Fourteenth Amendment. Specifically, the court is not persuaded that Pier 35 has purposefully availed itself of the privilege of conducting business in Florida. First, there is no evidence of the specific direction of Pier 35's activity at the State of Florida, by advertising or otherwise, and no evidence that Pier 35 had any particular reason to know that the gift cards which it distributed under the Agreement were ultimately purchased by Florida residents or used for the purchase of Florida-based travel accommodations.

Further, there is no evidence that Pier 35's performance under the Agreement involved any direct communications or interactions with any Florida residents, and no suggestion that Pier 35 was targeting customers in Florida; rather, it appears that Pier 35 was advertising generally for a worldwide audience and making cards available for purchase on the internet in a manner that could be accessed by potential travelers anywhere, usable by such persons only if they first redeemed the cards on the internet website through direct interactions with Travelocity. In other words, it does not appear that Pier 35 did anything affirmatively to reach into this jurisdiction, but rather engaged in generalized internet activities creating the possibility that "anyone, anywhere" might buy a gift card and redeem it on the travelocityincentives.com website.

With this predicate, the court finds that Pier 35 has not purposefully availed itself of the benefit of doing business in this State on the basis of commercial activity conducted in Florida, and could not reasonably have anticipated being haled into court here on the basis of any business activities in this forum. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 187 L. Ed.2d 624 (2014) (due process did not permit exercise of general jurisdiction over German corporation in California based on services performed there by its United States subsidiary that were "important" to it; rather, general jurisdiction requires allegations of contact so continuous and systematic as to render a foreign sister-state or foreign-country corporation essentially "at home" in the forum state); *Rao v. Era Alaska Airlines*, __ F. Supp. 2d ___, 2014 WL 2215862 (D. Md. 2014) (airline which advertised exclusively in Alaska for flights wholly within Alaska did not conduct business in Maryland sufficient to confer personal jurisdiction under state long-arm statue, even though Maryland customers may have purchased flight tickets from airline on the internet through Expedia); *Smith v. Basin Park Hotel, Inc.,* 178 F. Supp. 2d 1225 (N.D. Okla. 2001) (internet web sites will subject a defendant to general personal jurisdiction only when defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of forum).

In sum, the court finds: (1) Pier 35 does not fall within the reach of the Florida long-arm statute, either under the specific jurisdiction prong of § 48.193 (1) (a), or the general jurisdiction prong of § 48.193 (2), and that asserting jurisdiction over Pier 35 is therefore not permissible under the terms of the statute; (2) asserting jurisdiction over Pier 35 in Florida on the basis of its business activities in this state under the Florida long-arm statute would violate the due process requirements of the Fourteenth Amendment because these activities do not establish minimum contacts in Florida.

### 3.     Contractual Waiver or Consent to Personal Jurisdiction

With the elimination of the Florida long-arm statute as a basis for exercising jurisdiction over Pier 35, the court next examines Travelocity's alternative jurisdictional theory under Florida's contractual waiver statute.

It is undisputed that the Agreement's forum-selection clause includes a choice of law provision designating Florida law as the governing law, and includes a provision whereby Pier 35 agrees to submit to the jurisdiction of the courts of Florida. It is also undisputed that the Agreement involved consideration of over $250,000.00. While the Agreement itself does not bear a substantial or reasonable relationship to Florida, and neither party to the agreement is incorporated under the laws of this state, it is undisputed that at the time the Agreement was signed Travelocity maintained an office in North Palm Beach, Florida. The court finds that the inception date of the Agreement is the controlling point in time for determining the applicability of the § 685.101 factors, because this is the date on which the parties' reasonable expectations regarding the foreseeability of a Florida forum for dispute resolution were logically formed.

Considering the above-quoted provisions of the forum-selection clause, Pier 35 should have reasonably anticipated being haled into a Florida court. Through this clause, Pier 35 agreed to be sued in the Southern District of Florida, where Travelocity maintained an office at the time the Agreement was originally executed. A forum-selection clause is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable due to fraud, overreaching, violation of public policy, or that enforcement effectively deprives a party of his day in court. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-13, 92 S. Ct. 1907, 32 L.Ed.2d 513 (1972); *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912 (11th Cir. 1989).

Pier 35 has not asserted that the forum-selection clause is unreasonable due to fraud, overreaching, violation of public policy, or that enforcement will effectively deprive the defendant of its day in court. Thus, the forum selection clause is *prima facie* valid, and establishes the defendant's minimum contacts with Florida as the forum state for this litigation. *See Burger King,* 471 U.S. 462, 473 n. 14; *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). The Agreement contained a choice-of-Florida-law provision, and referenced the Southern District of Florida, West Palm Beach Division, and Florida state courts, alternatively, as a forum for any future dispute resolution; it also specifically recites consent to the jurisdiction of the courts of this State. Cumulatively viewed, these elements should have put defendant on notice that it could be sued in Florida. *See e.g. Goodman Co., L.P. v. A & H Supply, Inc*. 396 F. Supp. 2d 766 (S.D. Tex. 2005) (forum selection provision in written contract is *prima facie* valid and enforceable unless opposing party shows that enforcement would be unreasonable).

In short, because Pier 35 contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done. *Alexander Proudfoot Co World Headquarters v. Thayer*, 877 F.2d 912 (11th Cir. 1989). It is sufficient that the waiver provision is freely negotiated and is not unreasonable or unjust. *Id,* citing *Burger King*, 471 U.S. at 473 n. 14, 105 S. Ct. at 2182 n. 14. Pier 35 has not presented any evidence that the Agreement was signed under duress or is unreasonable. It has therefore contractually waived its due process right not to be subject to suit in a forum without sufficient contacts.

The court accordingly holds that by signing the Agreement containing the subject forum-selection clause, Pier 35 either consented to personal jurisdiction or waived the requirements for personal jurisdiction in this forum, and that the exercise of jurisdiction over this defendant on the

17

basis of this contractual waiver or consent comports with the due process requirements of the United States Constitution.

### IV.  Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

The Defendant Pier 35's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12 (b) (2) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 3rd  day of July, 2014.

_____
Daniel T. K. Hurley
United States District Judge

cc.  all counsel